**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONSOLIDATED CHASSIS,<br>MANAGEMENT LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE CO.,<br>JUAN MANUEL LAZARO and<br>P&B INTERMODAL SERVICES, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:22-cv-01316<br><br>Hon. Elaine E. Bucklo |
| TWIN CITY FIRE INSURANCE COMPANY,<br><br>    Counter-Plaintiff/Third-Party Plaintiff,<br><br>v.<br><br>CONSOLIDATED CHASSIS,<br>MANAGEMENT LLC, and BNSF RAILWAY<br>COMPANY<br><br>    Counter-Defendant/Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| BNSF RAILWAY COMPANY<br><br>    Counter-Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY,<br><br>    Counter-Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

**<u>BNSF RAILWAY COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Third-Party Defendant/Counter-Plaintiff, BNSF RAILWAY COMPANY ("BNSF"), by

the undersigned counsel, moves for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c) seeking to dismiss TWIN CITY FIRE INSURANCE COMPANY ("Twin

City")'s Third-Party Complaint and enter judgment on BNSF's counterclaim finding that the Twin City CGL Policy affords coverage for BNSF in the underlying personal injury case and Twin City has waived any and all defenses to coverage under the Twin City CGL Policy, as follows:

## INTRODUCTION

1.      This matter arises as the result of a personal injury action filed by Juan Manuel Lazaro against Consolidated Chassis Management LLC ("CCM") and BNSF alleging a slip and fall occurred as Mr. Lazaro was performing his work on BNSF's property, in the LPC Railyard ("LPC").  At the time, Mr. Lazaro was employed by P&B Intermodal Services, LLC ("P&B") as a mechanic tasked with performing inspections and repairs on intermodal container chassis.  Mr. Lazaro was walking around a chassis he was inspecting, when he allegedly encountered snow and ice, causing him to slip and suffer injury.  In his complaint, Plaintiff noted he was acting in the scope of his employment for P&B.

2.      Mr. Lazaro was only permitted to be on BNSF's premises because of his work for P&B.  P&B mechanics were allowed on the premises by virtue of a signed contract between P&B and BNSF, which called for P&B to defend and indemnify BNSF should one of the P&B mechanics on its premises become injured.  Under the terms of the contract, P&B was also required to obtain insurance naming BNSF as an additional insured, which would cover any liability claims against BNSF for such an injury.

3.      P&B and its insurer, Twin City, have an obligation to defend and indemnify BNSF in the underlying personal injury case, pursuant to the written agreement between P&B and BNSF, and the terms of the liability insurance policy issued by Twin City.

4.      BNSF tendered its defense to P&B and Twin City, but both P&B and Twin City have wrongfully refused to defend or indemnify BNSF and have attempted to shift responsibility

for such defense and indemnity to BNSF. Twin City has exposed P&B to potentially uninsured contractual liability by wrongfully denying coverage to BNSF for liability for an accident that occurred to one of P&B's workers, while they were engaged in work for P&B, which puts the accident squarely in the terms of BNSF and P&B's contract and the applicable Twin City insurance policy.

5.      In the instant motion, BNSF requests that this Court dismiss Twin City's Third Party Complaint seeking a declaration that there is no coverage under the Twin City insurance Policy and enter judgment on BNSF's counterclaim, declaring: the Twin City CGL Policy affords coverage for BNSF in the underlying personal injury case and Twin City is estopped from denying coverage under the Twin City CGL Policy.

## BACKGROUND FACTS

### I.      SUBSTANCE OF PLEADINGS

#### A.  Underlying Action

6.      The instant action arises out of a personal injury lawsuit filed in Cook County, IL and removed to the Northern District of Illinois, *Juan Manuel Lazaro v. CCM and BNSF*, case no. 20-cv-6157 (the "underlying personal injury case").

7.      The relevant allegations from the First Amended Complaint are that Mr. Lazaro was employed by P&B as a field technician at LPC walking around a chassis he was inspecting when he fell on ice and snow. **(ECF 47-1).**

8.      When Mr. Lazaro filed his initial complaint, he named P&B as a defendant. Due to the constraints of the Illinois Workers' Compensation Act, he was required to file an Amended Complaint and dismiss P&B as a direct defendant; however, his introduction to the First Amended Complaint Plaintiff includes that he raised a claim against P&B under the Federal Employer's

3

Liability Act, contending that his injuries were due to the negligence of P&B. *Id*.

      9.      At the time and place of the incident, Plaintiff was under the supervision of P&B, which conducted an hour-long personnel meeting with him prior to the accident. (*Id*. at ¶ 7).

      10.      He was also granted the use of a P&B truck for performing his duties. (*Id*. at ¶7-8).

      11.      P&B also owed Plaintiff a duty of care to provide him with proper personal protective equipment ("PPE") and to enforce safety rules and regulations regarding the use of PPE to ensure that Plaintiff remained free from injuries as he went about his work; however, the complaint only makes reference to use of a helmet. There is no reference to steel spikes for boots, or other equipment that should have been provided to prevent such an occurrence. (*Id*. at ¶13).

      12.      Further, Mr. Lazaro did not feel he could choose his work location as P&B never provided him a manner to do so. (*Id*. at ¶10).

      13.      Finally, Mr. Lazaro alleges that when he reported the incident, P&B provided neither medical treatment nor compensation. (*Id*. at ¶14-15).

      14.      BNSF brought a third-party complaint against P&B in the underlying personal injury case, including alleging P&B has contractually-mandated defense and indemnification obligations stemming from P&B's failure to provide Mr. Lazaro a reasonably safe place to work. (**ECF 47-2**). Exhibits to the Third-Party Complaint include (1) the First Amended Complaint; (2) BNSF's Answers and Affirmative Defenses to the First Amended Complaint; and (3) the governing Agreement between P&B and BNSF. (*Id*.)

  **B. The Instant Action**

      15.      As described below, the P&B indemnity agreement and the Twin City general liability policy are intended and understood to protect BNSF from claims such as those asserted in

the underlying personal injury case, and to be primary to any insurance carried by BNSF.

16.     CCM was covered under similar terms in its contract with P&B and is, similarly, an additional insured under the same Twin City insurance policy.

17.     By letter dated March 3, 2020, CCM tendered defense on behalf of itself and BNSF to P&B. (**ECF 1-1**, at ¶19).

18.     On November 9, 2020, CCM's counsel requested reconsideration of a denial of tender that was sent by letter on July 21, 2020. (*Id*. at p. 67-68).

19.     BNSF then issued an additional tender on February 18, 2021, to The Hartford Group as additional insureds under the Policy issued to P&B. (**ECF 47**, at ¶33).

20.     On March 30, 2021, BNSF sent a letter directly to Twin City demanding coverage under the Policy. Twin City never provided a substantive response to the numerous tenders sent to it by BNSF. (*Id.* at ¶34-35).

21.     After waiting nearly two years, on February 18, 2022, CCM filed the instant action for declaratory judgment and breach of contract against Twin City. (**ECF 1-1**).

22.     Twin City filed an answer denying the material allegations of CCM's declaratory judgment action and filed an identical counterclaim against P&B and a Third-Party Complaint against BNSF. (**ECF 8**).

23.     In response to Twin City's Third-Party Complaint, BNSF filed a counterclaim examining the agreement between BNSF and P&B, which was completely absent in Twin City's counterclaim. BNSF's counterclaim also analyzes the Twin City policy, including that by its express terms, the Endorsement does not limit BNSF's additional insured coverage on the basis of BNSF's negligence, liability or fault in order to trigger coverage for BNSF. It only requires that the subject injury be caused P&B's work. (**ECF 47**).

24.     BNSF is entitled to coverage as additional insured under a commercial general liability policy issued by Twin City and Twin City is estopped from contesting or disclaiming such coverage.

25.     Twin City denied all material allegations of the counterclaim.  (**ECF 48**).

## II.     <u>SUPPORTING DOCUMENTS TO THE PLEADINGS</u>

### A. Master Trailer/Container/Chassis On-Site Repair Agreement

26.     The Master Trailer/Container/Chassis On-Site Repair Agreement (the "P&B Agreement") between BNSF and P&B, dated October 1, 2016 (**ECF 47-3**), provides the terms by which BNSF agreed to allow P&B mechanics on certain of its property to perform grading and repair work on trailers, containers and chassis.

27.     Notably, Section 4 to the Agreement under Release of Liability and Indemnity provides for P&B to indemnify BNSF.  (*Id*. at p. 6-7).

28.     Section 5 of the P&B Agreement (insurance) provides that P&B shall procure and maintain the following Commercial General Liability insurance. This insurance shall contain broad form contractual liability and include coverage for, but not limited to, the following: Bodily Injury and Property Damage; and Personal Injury and Advertising Injury.  (*Id*. at p. 8).

29.     Paragraph 5(a)(i) of the P&B Agreement provides that the foregoing required insurance policies shall also contain the following endorsements or language, which shall be indicated on the certificate of insurance:

> • Waiver of subrogation acceptable to BNSF
> • Additional insured endorsement in favor of BNSF and acceptable to BNSF
> • Separation of insureds
> • The policy shall be primary and non-contributing with respect to any insurance carried by BNSF

(*Id*. at p. 8).

6

30.     Also under the terms of the agreement, P&B was under a contractual obligation to perform the aforesaid services in a reasonably safe, proper and adequate manner. P&B was further under a duty to train, equip and supervise its employees so as to permit them to perform the aforesaid services in a reasonably safe, proper and adequate manner. As set forth in the P&B Agreement:

> It is agreed and understood that Provider shall have ultimate responsibility for supervision, safe work methods and practices of its employees, subcontractors and agents…Provider will ensure that its employees, subcontractors and agents providing labor, material or supervision for the Services shall at all times comply with BNSF's safety rules while on BNSF property and while performing the Services…Safety Material and Equipment: Provider shall be responsible for providing all necessary personal protective equipment and other safety related equipment it deems necessary and shall take all necessary precautions for the safety of Provider, its employees, subcontractors and agents.

(*Id*.)

### B. Twin City Policy

31.     The Hartford Company: Twin City issued Policy Number 13 CES OF7391 to P&B, effective from September 1, 2019, through September 1, 2020, (the "Policy"). (**ECF 47-5**).

32.     The Twin City CGL Policy designates as additional insureds "person(s) or organization(s) are an additional insured when you [P&B] have agreed, in a written contract, written agreement…that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement." (*Id.*)

33.     The Twin City CGL Policy also contains "Additional Insured – as Required by Written Contract - Option V" on endorsement form HS 30 06 03 17 (the "Endorsement"). (**ECF 47-6**). The Endorsement further provides that the additional insured is insured "only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury'…[and]

(3)...only if, and to the extent that, the injury or damage is caused by 'your work' to which the 'written contract' applies." (*Id*.)

34.     Notably, BNSF was provided a Certificate of Liability Insurance, naming BNSF as an additional ensured by way of Endorsement HS3006 to policy 13CESOF7391 (**ECF 47-4**).

**ARGUMENT**

## I.     LEGAL STANDARD

35.     "A Rule 12(c) motion for judgment on the pleadings is 'designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'"  *Cincinnati Insurance Co. v. Contemporary Distribution, Inc.*, No. 09 C 2250, 2010 U.S. Dist. LEXIS 6718, at *4-5 (N.D. Ill. Jan. 26, 2010) (*citing All Amer. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000)). "Where the plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position."  *Id*. (internal quotations omitted).  In reviewing judgment on the pleadings in an insurance declaratory judgment action, the relevant pleadings include the Complaint, the Answer, the underlying third-party complaint, and the portions of the insurance policy attached to the Complaint.  *Id*.  Where jurisdiction is based on diversity of citizenship, Illinois substantive law applies.  *Ervin v. Travelers Personal Insurance Co.*, 317 F. Supp. 3d 1014, 1016 (N.D. Ill. 2018).

## II.     BNSF IS AN ADDITIONAL INSURED UNDER THE TERMS OF P&B'S TWIN CITY INSURANCE POLICY

36.     When interpreting a contract, the court seeks to give effect to the parties' intent. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (Ill. 2011). To determine intent, the court first looks to the language of the contract alone.  *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (Ill. 2007). The

language of the contract, given its plain and ordinary meaning, is the best indicator of the parties'

intent.  *Id*.  The court must look at the contract as a whole, because words derive meaning from

the context in which they are used.  *Id*.  When the parties agree to the language in a contract, it is

presumed that they chose their words deliberately.  *Thompson*, 241 Ill. 2d at 442. As such, the

court should give the chosen language its effect and should not interpret the contract in a manner

that would nullify or render a provision meaningless.  *Id*.  Though an insurance policy generally

will be construed liberally in favor of coverage, of paramount importance is the reasonable

construction of the policy.  *Travelers Insurance Companies v. P.C. Quote, Inc.*, 211 Ill. App. 3d

719 (1st Dist. 1991).

      37.      BNSF and P&B are parties to a written contract whereby it was agreed that P&B

shall procure and maintain Commercial General Liability insurance including coverage for Bodily

Injury and Property Damage with an Additional Insured Endorsement in favor of BNSF.  (**ECF

47-3**, at p. 8).

      38.      The Twin City Policy defines "Additional Insureds When Required by Written

Contract" as:

> [P]erson(s) or organization(s) are an additional insured when you [P&B]
> have agreed, in a written contract, written agreement or because of a permit
> issued by a state or political subdivision, that such person or organization
> be added as an additional insured on your policy, provided the injury or
> damage occurs subsequent to the execution of the contract or agreement.

(**ECF 47-5**).

      39.      BNSF was provided a Certificate of Liability Insurance, naming BNSF as an

additional ensured.  (**ECF 47-4**).

      40.      In *United States Fire Insurance Co. v. Hartford Insurance Co.*, the First District of

Illinois had to interpret a substantially similar provision to determine whether there was an

additional insured under the contract.  The policy defined additional insureds as: "any person or

9

organization with whom you agreed, because of a written contract…to provide insurance such as

is afforded under this policy…" 312 Ill. App. 3d 153, 156 (1st Dist. 2000).

41.     The First District created a rule for interpreting this provision, which in this case

would put BNSF squarely as an additional insured,

> When reading the policy phrase within the context of the entire provision,
> as we must, the only reasonable construction is that there must be a written
> document -- contract, agreement, or permit -- which evidences the insured's
> intention to provide insurance coverage to another person or organization
> before the Hartford policy will cover that person or organization as an
> additional insured.

*Id*.

42.     In the *United States Fire Insurance Co.* case, the parties did not have a written

contract to satisfy the insurance policy provision, however, in *Mt. Hawley Insurance Co. v.*

*Robinette Demolition, Inc.*, the First District of Illinois had a similar policy provision and a written

contract.    2013 IL App (1st) 112847, ¶ 54.    In *Mt. Hawley*, two companies entered into a

subcontractor Agreement with a "defend, indemnify and hold harmless" provision that included

coverage for "any and all other Additional Insureds specified in Schedule 'B'". *Id*. ¶5.  The alleged

additional insured was never actually named in the agreement, but was named on a certificate of

insurance Schedule B.    The Court held that the Agreement, when read with the certificate of

insurance, was enough to satisfy the policy and find there was an additional insured.  *Id*. at ¶54.

(*Compare, Clarendon Am. Ins. Co. v. Aargus Sec. Sys*, 374 Ill. App. 3d 591, 596-96 (1st Dist.

2007) (finding no additional insured because there were no written agreements between the insured

and the *alleged* additional insured).

43.     The written Agreement in this case is clear and unambiguous, it was agreed that

P&B shall procure and maintain Commercial General Liability insurance including coverage for

Bodily Injury and Property Damage with an Additional Insured Endorsement in favor of BNSF.

Further, BNSF was provided a certificate of liability insurance naming BNSF as an Additional Insured, which, while not dispositive, weighs significantly in favor of finding an additional insured. The instant case is much stronger than *Mt. Hawley*, and therefore BNSF is an additional insured under the terms of the contract.

### III. BNSF IS COVERED UNDER THE TERMS OF THE POLICY

#### A. Twin City has a duty to defend BNSF

44.     Generally, Illinois law imposes a duty to defend if a comparison of the underlying complaint and the insurance policy demonstrates that the claim falls or could potentially fall within the coverage. *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 455 (Ill. 2010). If there is any doubt, it should be resolved in favor of the insured because courts are "required to liberally construe the insurance policy and resolve doubts or ambiguities in favor of the insured." *A-1 Roofing Co. v. Navigators Insurance Co.*, 2011 IL App (1st) 100878, ¶ 18. The Illinois Supreme Court has held that a court should consider all relevant facts contained in the pleadings, including third-party complaints and counterclaims, to decide an insured's status. *Wilson*, 237 Ill. 2d at 460-62.

45.     Where the employer of an injured employee is the insured, the Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) gives tort immunity to the employer, thereby barring the injured worker from bringing a personal injury complaint against his or her employer. *Am. Country Ins. Co. v. James McHugh Construction Co.,* 344 Ill. App. 3d 960, 963, (2003). "As the Third Circuit Court of Appeals recently recognized, even under Pennsylvania's strict rule against considering facts that are not in the underlying complaint, the allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor even where the complaint does not include allegations against that employer." *Id*. at ¶37 (*citing Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677-679 (3d Cir. 2016)).

46. This Court has examined nearly identical policy provisions applied to facts analogous to the instant case and have determined the duty to defend was triggered. *Scottsdale Insurance Co. v. Columbia Insurance Group, Inc.*, 403 F. Supp. 3d 656, 659 (N.D. Ill. 2019), *aff'd Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.* 972 F.3d 917 (7th Cir. 2020).

47. In *Scottsdale*, the underlying plaintiff's employer TDH, had been contracted to install an HVAC system at a construction site when he was injured falling through an opening in the floor, Prairie was the construction manager of the site, and Rockwell was the legal owner. *Id.* at 658.

48. Under TDH's insurance policy an additional insured was defined as "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." *Id.* There was a similar provision that laibiltiy must be "caused, in whole, or in part, by 'your work' arising out of your ongoing operations performed for that additional insured." *Id.*

49. The underlying complaint in *Scottsdale* alleged that Prairie and Rockwell negligently failed to supervise, inspect, monitor, and coordinate the work and failed to ensure there were adequate protections in place to prevent plaintiff from falling through the floor and becoming injured. *Id.* at 661. In determining the exclusion did not apply and the insurer had a duty to defend the Court recognized that the insured was also on the jobsite and therefore, could be found to have engaged in the same conduct being imputed to Prairie and Rockwell. *Id.* Therefore, it is possible the insured's negligence could be a cause of the injuries and the insurer has a duty to defend. *Id.*

50. Similarly, in *Crum & Forster Specialty Insurance Co. v. Imperial Crane Services*, the underlying plaintiff was employed on a construction site when he became injured by a crane.

12

No. 1-16-2926, 2017 Ill. App. Unpub. LEXIS 1960, at *2-3 (1st Dist. Sep. 22, 2017). The additional insured endorsement contained an exclusion limiting coverage "only with respect to liability caused, in whole or in part, by 'your work' for that insured." *Id*. at *6-7. The question was whether the accident was caused by the work of the plaintiff's employer, where there were no allegations of its negligence in the complaint. The Court concluded that the obligations of the employer to supervise and control the operation and maintenance of the crane and to give instructions and directions to all operators of the crane, under its lease with the additional insured, satisfied the policy's additional insured requirement of work or operation performed by the plaintiff's employer on behalf of the additional insured. *Id*. at 19-20. *See also American States Insurance Co. v. Pinnacle Consultants, Inc.*, No. 1098-3328, 2000 Ill. App. LEXIS 764, at *18-19 (1st Dist. Sep. 20, 2000) (where underlying plaintiff was injured on failed rebar and the presence of the failed rebar was connected to the employer/insured's work or materials on the project, and the allegations are vague, we are required to liberally construe the allegations of the complaint in favor of the insured).

51.     The instant case has one of the strongest indicators that P&B was negligent, it was a named defendant in the original complaint. Absent the bar instituted by the Workers' Compensation Act, Plaintiff fully intended to continue his suit against his employer for negligence and wanted that to be clear by referring to that in the subsequent pleading. Similar to the *Scottsdale* and *Pinnacle* cases, the injury occurred because of a condition present where the insured was performing work and where the employer was present on site. At the time and place of the incident, Plaintiff was under the supervision of P&B, which conducted an hour-long personnel meeting with him prior to the accident. (Id. at ¶ 7). Mr. Lazaro did not feel he could choose his work location. (Id. at ¶10). Any of the allegations that Mr. Lazaro has alleged in his complaint can be made

against P&B, who Mr. Lazaro is not permitted to name.  And in fact, both CCM and BNSF have filed Third Party complaints against P&B restating these allegations of negligence.  (**ECF 1-1**, at p. 19; **ECF 47-2**).  BNSF's Third Party complaint contained the duties that P&B agreed to under the parties' contract, which would necessarily have been breached as the result of the alleged occurrence.

52.     Additional allegations of P&B's negligence are contained throughout the complaint.  Mr. Lazaro was also granted the use of a P&B truck for performing his duties.  (**ECF 47-1** at ¶7-8).  P&B also owed Plaintiff a duty of care to provide him with proper PPE, however, the complaint only makes reference to use of a helmet.  There is no reference to steel spikes for boots, or other equipment that should have been provided to prevent such an occurrence.  (*Id*. at ¶13).  Finally, when Mr. Lazaro reported the incident, P&B provided neither medical treatment nor compensation.  (*Id*. at ¶14-15).  Where Courts in the Seventh Circuit have examined the same policy terms and fact pattern it has found sufficient evidence of negligence on the part of the employer to trigger the duty to defend.

## IV.     TWIN CITY IS ESTOPPED FROM ASSERTING AND/OR HAS WAIVED ANY TERMS THE PRECLUDE OR LIMIT COVERAGE

53.     Twin City is estopped from challenging its duty to defend.  The Illinois court has noted the following about estoppel:

> The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. The estoppel doctrine has deep roots in Illinois jurisprudence. It arose out of the recognition that an insurer' s duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract. Although the

14

doctrine also has roots in the principle of equitable estoppel, a review of the case law reveals that it has since developed into a distinct doctrine that stands on its own.

*Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-51 (Ill. 1999) (internal citations omitted).

54.     In *A-1* the Court found estoppel where nearly four years after tendering the underlying suit to the insurer, it had responded in a letter but failed to do anything further.  2011 IL App (1st) 100878, ¶ 21.  The Court held under the rule from *Ehlco*, the insurer is estopped from asserting policy defenses to coverage.  *Id*.

55.     So the same result must be reached in this case.  CCM initially tendered the defense of this lawsuit to Twin City on March 3, 2020.  (**ECF 1-1**, at ¶19).  BNSF then issued an additional tender on February 18, 2021, to The Hartford Group as additional insureds under the Policy issued to P&B.  (**ECF 47**, at ¶33).  On November 9, 2020, CCM's counsel requested reconsideration of a denial of tender that was sent by letter on July 21, 2020.  (**ECF 1-1**, at p. 67-68).  On March 30, 2021, BNSF sent a letter directly to Twin City demanding coverage under the Policy. Twin City never provided a substantive response to the numerous tenders sent to it by BNSF.  (*Id.* at ¶34-35).  After waiting nearly two years, on February 18, 2022, CCM filed the instant action for declaratory judgment and breach of contract against Twin City.  (*Id.*).

56.     Other than the letter of July 21, 2020, which was found insufficient in the *A-1 Roofing* case, Twin City failed to defend the suit under a reservation of rights or file a declaratory judgment action and instead waited for CCM to do so nearly two years after the initial tender. Therefore, Twin City should be estopped from asserting any challenges to its duty to defend.

WHEREFORE, Defendant BNSF RAILWAY COMPANY prays that this honorable Court grant its Motion for Judgment on the Pleadings and dismiss Twin City's Third-Party Complaint

with prejudice and enter Judgment in favor of BNSF on its Counterclaim.

                                        Respectfully Submitted,

                                        BNSF RAILWAY COMPANY

                                        By:    /s/ Lisa M. Roccanova
                                               One of Its Attorneys

Jeffrey J. Scolaro
Lisa M. Roccanova
Daley Mohan Groble, P.C.
55 West Monroe Street Suite 1600
Chicago, IL 60603
jscolaro@daleymohan.com
lroccanova@daleymohan.com

## CERTIFICATE OF SERVICE

I hereby certify that, on Friday, March 3, 2023 I caused to be filed electronically the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Counsel for Consolidated Chassis Management LLC*
David J. Sullivan
John P. O'Malley
SULLIVAN O'MALLEY LLC
135 S. LaSalle St., Suite 2200
Chicago, IL 60603
dsullivan@SOM-Law.com
jomalley@SOM-Law.com

*Counsel for Twin City Fire Insurance Company*
Michael J. O'Malley
Wilson Elser Moskowitz
Edelman & Dicker, LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
michael.omalley@wilsonelser.com

/s/ Lisa M. Roccanova