IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED CHASSIS MANAGEMENT, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 22 C 1316 ) ) |
| TWIN CITY FIRE INSURANCE CO., JUAN MANUEL LAZARO and P&B INTERMODAL SERVICES, LLC | ) ) ) ) |
| Defendants. | ) ) |
| TWIN CITY FIRE INSURANCE COMPANY, | ) ) ) |
| Counter-plaintiff/Third-Party Plaintiff | ) ) ) |
| v. | ) ) |
| CONSOLIDATED CHASSIS MANAGEMENT, and BNSF RAILWAY COMPANY | ) ) ) ) |
| Counter-Defendants/Third-Party Defendant | ) ) ) |
| BNSF RAILWAY COMPANY, | ) ) |
| Counter-Plaintiff | ) ) |
| v. | ) ) |
| TWIN CITY FIRE INSURANCE COMPANY, | ) ) ) |
| Counter-Defendant. | |

Memorandum Opinion and Order

In the course of performing his work as an employee of P&B Intermodal, Juan Manuel Lazaro was inspecting a chassis on BNSF Railway's premises when he slipped and fell on an accumulation of ice and snow, causing injury to his back, chest, neck, hips, and head. Lazaro sued P&B and BNSF, claiming that their negligence caused his injury. He later amended his complaint, dropping his claims against his employer and replacing them with a materially identical negligence claim against Consolidated Chassis Management, LLC. *See Lazaro v. BNSF Railway et al.*, No. 1:20 cv 6157 (N.D. Ill.).

This action seeks to determine the parties' rights and obligations with respect to the defense of *Lazaro*, and to establish, in the event Mr. Lazaro prevails in that action, who must compensate him for his losses. Before me are three motions for judgment on the parties' respective pleadings, all directed to those issues. For the reasons that follow, I grant the motions by CCM and BNSF, both of which seek a declaration that P&B's insurer, Twin City Fire Insurance Company, owes them a duty to defend against Lazaro's suit, and a further declaration that Twin City is estopped from asserting any policy defenses to deny coverage. And for the same reasons, I deny Twin City's motion seeking declarations to the contrary.

I.

The facts concerning Mr. Lazaro's injury and the procedural history of his claims and the instant action are undisputed. On December 11, 2019, while performing his duties as a field technician employed by P&B, and pursuant to both a Maintenance and Repair Agreement ("MRA") between P&B and CCM, and a Master Trailer/Container/Chassis On-Site Repair Agreement ("Master Agreement") between P&B and BNSF, Mr. Lazaro was inspecting a chassis at BNSF's Logistics Park Chicago ("LPC") railyard when he slipped and fell on an unnatural accumulation of ice and snow. According to Mr. Lazaro's amended complaint, BNSF "owned, operated, and controlled" LPC, and CCM also "operated, and/or controlled" the premises. The amended complaint asserts that both entities breached a duty of care they owed him to inspect the working areas and maintain them in safe condition by removing snow and ice and a duty to warn him of the hazardous conditions. *See Lazaro* Am. Compl., ECF 4-1 at Exh. A, ¶¶ 22-26 (against BNSF), 32-35 (against CCM). These allegations echo those Mr. Lazaro originally asserted against his employer, P&B. *See Lazaro* Compl. ECF 56-1 at Exh. A, ¶¶ 28-29 (against P&B). Count I of the underlying amended complaint claims negligence and violation of the Premises Liability Act against BNSF, and Count II asserts the same claims against CCM. *See* ECF 4-1.

CCM and BNSF each denied and continue to deny any liability for Mr. Lazaro's alleged injuries and tendered defense of *Lazaro* to P&B and its insurer, Twin City. Twin City denied coverage and declined to undertake these entities' defense. Accordingly, CCM and BNSF each filed a Third Party Complaint against P&B alleging that Mr. Lazaro's alleged injuries were caused by P&B's negligent breach of its duty ensure a safe working environment for its employees. *See* CCM Third Party Complaint, ECF 1-1, Exh. A; BNSF Third-Party Complaint, ECF 47-2. CCM and BNSF also claimed breaches of their respective contracts with P&B and sought contribution, indemnity, and a declaratory judgment. *See id*. This action followed.

### CCM's Complaint

CCM's Complaint for Declaratory Judgment and Other Relief alleges that CCM's contract with P&B required that P&B obtain Commercial General Liability insurance that names CCM as an additional insured on a primary and non-contributory basis. ECF 1-1 at ¶ 17. The coverage was to include:

> by its terms or via endorsement, liabilities arising from premises, operations, products-completed operations, personal and advertising injury, and liability assumed under an insured contract. Without limitation, the coverage afforded under such policy shall include bodily injury or property damage arising out of: (a) [P&B's] performance of maintenance and repair services, inspection, or storage of any Chassis under this Agreement.

MRA, ECF 1-1, Exh. C at 31.

4

Twin City issued to P&B Policy 13CES OF7391 (the "Twin City Policy") for the period covering Mr. Lazaro's alleged injuries, which provides as follows:

**SECTION II WHO IS AN INSURED**

**5. Additional Insureds When Required by Written Contract, Written Agreement or Permit**

The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.

* * *

f. Any Other Party

Any other person or organization who is not an additional insured under Paragraphs a. through e. above and has not been added as an additional insured by separate endorsement under this Coverage Part, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" as described in Paragraph ... (3) below:

* * *

(3) If neither Paragraph (1) nor (2) applies, then the person or organization is an additional insured only if, and to the extent that, the injury or damage is caused by "your work" to which the "written contract" applies.

Twin City Policy, ECF 8-1 and 47-5 (page ID illegible). The Twin City Policy defines "your work" as follows:

25. "Your work":

5

    a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
      (2) The providing of or failure to provide warnings or instruction

Twin City Policy, ECF 8-1 and 47-5 (page ID illegible).

    CCM tendered its own and BNSF's defense of *Lazaro* on March 3, 2020. On July 21, 2020, Twin City denied coverage on the ground that CCM is not an insured under the Twin City Policy. CCM renewed its tender in November of 2020. Twin City allegedly failed to respond to CCM's second tender or its follow-up communications and has declined to defend CCM. Twin City did not, however, file a declaratory action seeking a determination of coverage until March of 2022, after the instant suit was filed.

## BNSF's Counterclaim

    In its counterclaim, BNSF alleges that Lazaro's work at LPC was governed by the Master Agreement between BNSF and P&B. Pursuant to the Master Agreement, P&B undertook full responsibility for Lazaro's performance of his work. The Master Agreement contains indemnity provisions that provide:

    **4. RELEASE OF LIABILITY AND INDEMNITY**

a) To the fullest extent permitted by law, Provider shall release, indemnify, defend and hold harmless BNSF and BNSF's affiliated companies, partners, successors. assigns, legal representatives, officers, directors, shareholders employees and agents (collectively, "Indemnified Parties") for, from and against any and all claims, liabilities, fines, penalties, costs, damages, losses, liens, cause of action, suits, demands, judgments and expenses (including, without limitation, court cost, attorneys' fees and costs of investigation, removal and remediation and governmental oversight costs)environmental or otherwise (collectively "Liabilities") of any nature, kind or description of any person or entity directly or indirectly arising out of, resulting from or related to (in whole or in part):

...

iv. Injury to or death of any person. Including employees of either Provider or BNSF, or loss, destruction of, or damage to any property arising directly or indirectly, in whole or in part, from the actions or omissions of Provider or its employees.

...

THE LIABILITIES ASSUMED BY PROVIDER SHALL NOT BE AFFECTED BY THE FACT, IF IT IS A FACT, IT WAS OCCASIONED BY OR CONTRIBUTED TO BY THE NEGLIGENCE OF ANY INDEMNIFIED PARTY, EXCEPT TO THE EXTENT THAT SUCH CLAIMS ARE PROXIMATELY CAUSED BY THE INTENTIONAL MISCONDUCT OR GROSS NEGLIGENCE OF AN INDEMNIFIED PARTY.

...

c) Provider further agrees, at its expense, in the name and on behalf of BNSF, that it shall adjust and settle all claims made against an Indemnified Party, and shall, at BNSF's discretion, appear and defend any suits or actions at law or in equity brought against an Indemnified Party on any claim or cause of action arising or growing out of or in any manner connected with any liability assumed by Provider under this Agreement for which an Indemnified Party is liable or is alleged to be liable. BNSF shall give notice to Provider, in writing, of the receipt or pendency of such claims and thereupon Provider shall proceed to adjust and handle to a conclusion such claims, and in the event of a suit being

> brought against an Indemnified Party, BNSF may forward summons and complaint or other process in connection therewith to Provider, and Provider, at BNSF's discretion, shall defend, adjust, or settle such suits and protect, indemnify, and save harmless the Indemnified Parties from and against all damages, judgments, decrees, attorney's fees, costs, and expenses growing out of or resulting from or incident to any such claims or suits.

Master Agreement, ECF 47-3 at 6-7. These provisions are followed by a section captioned "INSURANCE" requiring P&B to obtain Commercial General Liability insurance and providing that such insurance must contain an "Additional insured endorsement in favor of BNSF and acceptable to BNSF." *Id*. at 8. P&B certified to BNSF that BNSF was named an additional insured on the following insurance policy:

Twin City Fire Insurance Company
Commercial General Liability Policy No. 13CESOF7391
Policy Effective Dates: 9/1/19 to 9/1/20
Limits Each Occurrence: $1,000,000

Certificate of Insurance, ECF 47-4.

BNSF alleges that, as noted above, CCM tendered its own and BNSF's defense to Twin Cities on March 3, 2020. BNSF made additional tenders on February 18, 2021, and on March 30, 2021, but never received a substantive response from Twin City, which refused to defend BNSF in *Lazaro*.

### Twin City's Counterclaim

Twin City's counterclaim for declaratory judgment rests on the same provisions of the Twin City Policy as those asserted by

8

CCM and BNSF. Twin City claims, however, that these entities are not additional insureds under the policy because their liability for the injuries alleged in *Lazaro* was not caused by P&B's work under the written contract; rather their liability in *Lazaro* is alleged to rest with the conditions of the premises and their own actions as respects their relationship to that premises.

## II.

All agree that the scope of Twin City's coverage obligations is a matter appropriate for resolution under Fed. R. Civ. P. 12(c), which "is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.*, 785 F. Supp. 2d 722, 726 (N.D. Ill. 2011). A motion for judgment on the pleadings is subject to the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). That is, the pleadings and other materials I may appropriately consider must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

At the outset, I must decide which state's laws apply to the parties' substantive dispute. Because my jurisdiction is based on

diversity of citizenship, Illinois law applies unless the issue is in dispute. *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies."). If there is a dispute, I apply Illinois's choice-of-law rules to decide which state's laws govern. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Although Twin City asserts that New Jersey law applies "to the extent there are differences between Illinois law and New Jersey law," ECF 55 at 7, it does not pinpoint any material difference between the laws of these states. Indeed, Twin City cites both Illinois and New Jersey cases and argues that the outcome is the same under the law of either state. Because Illinois courts require a choice-of-law determination "only when a difference in law will make a difference in the outcome," *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007), and because the party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *see Aon plc v. Heffernan*, No. 16-CV-01924, 2017 WL 478270, at *6 (N.D. Ill. Feb. 6, 2017) (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)), Twin City's failure to identify any outcome-determinative difference between New Jersey law and Illinois law mandates application of the latter.

The crux of the parties' dispute is whether CCM and BNSF are additional insureds under the Twin City Policy as to insurance claims arising out of *Lazaro*. CCM and BNSF argue that because Mr. Lazaro was injured while performing work as P&B's employee under P&B's written contracts with CCM and BNSF, their liability for his injuries, if any, was "caused by" P&B's work to which the written contracts apply. Accordingly, CCM and BNSF satisfy the Twin City Policy's criteria for coverage as additional insureds. By Twin City's lights, however, because these entities' potential liability in *Lazaro* is based on "the conditions of the premises and their own actions or inactions in owning, operating, and maintaining such premises," Mr. Lazaro's injuries were not "caused by" P&B's work under the written contracts. Twin City Mot., ECF 55 at 8. Resolution of the parties' competing arguments turns on the meaning of the phrase "caused by" as used in the Twin City Policy.

Illinois courts construe insurance contracts in accordance with ordinary rules of contract interpretation. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 823 N.E.2d 561, 564 (2005). "If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular* meaning." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (1992) (original emphasis). Any ambiguities in the policy "will be construed in favor of the insured and against the insurer who drafted the policy." *Id*.

"An insurer's duty to defend is broader than its duty to indemnify." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) (citing *Outboard Marine*, 607 N.E.2d at 1220). To determine whether an insurer has a duty to defend, a court compares the allegations of the underlying complaint with the language of the insurance policy. *Id.* If the underlying complaint "alleges facts within or potentially within policy coverage," the insurer can refuse to defend only "if the allegations of the underlying complaint preclude any possibility of coverage." *Id.* (quoting *Illinois Tool Works, Inc. v. Travelers Cas. & Sur. Co.*, 26 N.E.3d 421, 428 (Ill. App. Ct. 2015)). Courts may also look to third-party complaints to determine whether the insurer has a duty to defend, with the caveat that self-serving complaints designed to trigger coverage or "filed merely to fill in information" should not be considered. *Farmers Auto. Ins. Ass'n v. Neumann*, 28 N.E.3d 830, 834 (Ill. App. Ct. 2015).

Applying these standards, I conclude that CCM and BNSF are additional insureds that Twin City has a duty to defend. While it is true that the amended complaint in *Lazaro* does not specifically attribute negligence to P&B, that fact is not dispositive where the allegations of that complaint do not preclude the possibility of coverage and other materials appropriate for consideration suggest that P&B's own negligence might have caused or contributed to Mr. Lazaro's injury. *See Scottsdale Ins. Co. v. Columbia Ins.*

12

*Grp., Inc.*, 403 F. Supp. 3d 656, 661 (N.D. Ill. 2019), aff'd, 972 F.3d 915 (7th Cir. 2020). As all agree, Lazaro was present at the work site expressly and exclusively for the purpose of performing work on behalf of P&B pursuant to P&B's written contracts with CCM and BNSF. That is, P&B's work was undisputedly a but-for cause of Mr. Lazaro's injury. That is sufficient to trigger coverage under the Twin City Policy's additional insured endorsement. *See Old Republic Ins. Co. v. Kenny Constr. Co.*, No. 15-CV-03524, 2017 WL 4921970, at *10 (N.D. Ill. Oct. 31, 2017).

As the *Kenny* court explained, Illinois courts have held that "*any* causal connection between [the subcontractor's] work and the liability is sufficient to establish [the general contractor's] status as an additional insured." *Id.* (quoting *Patrick Eng'g, Inc. v. Old Republic Gen. Ins. Co.*, 973 N.E.2d 1036, 1045-46 (Ill. App. Ct. 2012) (emphasis in *Patrick*)). Accordingly, when an employee of a subcontractor is injured while "doing an activity in furtherance of the work [the general contractor] hired [the subcontractor] to do," the general contractor is an additional insured under a policy that covers liability "arising out of" the subcontractor's work. *Id.* (citing *Am. States Ins. Co. v. Liberty Mut. Ins. Co.*, 291 Ill. App. 3d 336, 341, 683 N.E.2d 510, 513 (1997)). *See also Maryland Cas. Co. v. Chicago & N. W. Transp. Co.*, 466 N.E.2d 1091, 1094 (Ill. App. Ct. 1984) ("'but for' causation, not necessarily proximate causation, satisfies" policy language covering

13

additional insureds for liability "arising out of" the insured's use of the premises).

Twin City argues for a different result here based on the language of its policy, which uses the phrase "caused by" rather than the phrase "arising out of." But the *Kenny* court rejected this very argument, calling the distinction that Twin City points to "a distinction without a difference." *Kenny*, 2017 WL 4921970, at *10. Indeed, the *Kenny* court explained:

> Like the "arising out of" language, the phrase "caused by" is "both broad and vague"—because causation can refer to either but-for or proximate causation—and "must be liberally construed in favor of the insured."

*Id*. (quoting *Cas. Ins. Co. v. Northbrook Prop. & Cas. Ins. Co.*, 501 N.E.2d 812, 814 (1986)). In other words, because the phrase "caused by" is reasonably susceptible to two interpretations, Illinois rules of insurance policy construction require the ambiguity to be resolved in favor of coverage.

*Northbrook* is instructive. There, the court first interpreted the broadly-worded grant of coverage in the additional insured endorsement to require only but-for causation rather than proximate causation. 501 N.E.2d at 814. The court went on to conclude that because there was no "reference in the endorsement requiring the fault" of the named insured, the mere fact that the underlying plaintiff was injured while performing work for the named insured, pursuant to contract with the additional insured,

14

was sufficient to trigger coverage. *See Cas. Ins. Co. v. Northbrook Prop. & Cas. Ins. Co.*, 501 N.E.2d 812, 815 (1986). Indeed, the absence of such limiting language was the basis on which the *Northbrook* court distinguished the case before it from the insurer's primary authority, *Consolidation Coal Co. v. Liberty Mut. Ins. Co.*, 406 F. Supp. 1292, 1294 (W.D. Pa. 1976). The policy at issue in *Consolidation Coal*, the *Northbrook* court explained, "provided that Consolidation Coal was an additional insured, 'but only with respect to *acts or omissions of the named insured* in connection with the named insured's operations at the applicable location designated.'" 501 N.E.2d at 814 (emphasis in *Northbrook*). Because the endorsement in *Northbrook* contained no similar limitation, the court held that the additional insured was "entitled to a defense" regardless of the named insured's fault. *Id*. at 815.

So, too, in this case: The Twin City policy broadly grants additional insured coverage to claims for bodily injury "caused by" P&B's work to which its "written contract[s]" with CCM and BNSF apply, with no requirement that P&B be at fault. These features distinguish the policy from those at issue in the cases Twin City cites. *See Nat'l Fire Ins. of Hartford v. Walsh Const. Co.*, 909 N.E.2d 285, 288 (Ill. App. Ct. 2009) (additional insured endorsement contained a "sole negligence" exclusion that precluded coverage where the additional insured was the only entity alleged

15

to be negligent); *AIX Specialty Ins. Co. v. Raincoat Roofing Sys., Inc.*, 590 F. Supp. 3d 1148, 1154 (N.D. Ill. 2022) (additional insured coverage limited to derivative liability based on negligent actions committed by named insured). Having considered the language of the Twin City Policy in light of the foregoing authorities, I am persuaded that Twin City has a duty to defend CCM and BNSF regardless of whether the amended complaint in *Lazaro* attributes fault to P&B. That the amended complaint does not "foreclose coverage" under the policy is enough. *See Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

Even if P&B's fault were required, however, the record before me—which includes Mr. Lazaro's original complaint and the third-party complaints filed by CCM and BNSF—raises a reasonable inference that P&B's own negligence may have contributed to his injury. I am mindful that the original complaint in *Lazaro* is no longer operative; but Twin City does not dispute that Mr. Lazaro withdrew his negligence claim against P&B not because he attributed no fault to P&B, but because that claim was incompatible with the Workers' Compensation Act. And I have considered Twin City's argument that I should not consider CCM's and BNSF's third party complaints because they are "self-serving" pleadings by the entities seeking coverage, but the argument is not persuasive on the record here. Indeed, the third party complaints were filed

16

long before Twin City asserted its counterclaim, and they do not appear to have been designed simply to trigger coverage. *Cf. Walsh*, 909 N.E.2d at 293 (circuit court properly refused to consider the allegations in third-party complaint filed after coverage litigation arose).

For the foregoing reasons, I conclude that Twin City breached its duty to defend CCM and BNSF in the *Lazaro* litigation. I further conclude that Twin City must indemnify these entities for any judgment that may be entered against them in *Lazaro* and is estopped from asserting policy defenses to coverage due to its failure either to defend CCM and BNSF under a reservation of rights or to seek a timely declaratory judgment of no coverage. *See Employers. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1133 (Ill. 1999) ("under the estoppel doctrine, an insurer which breaches its duty to defend is estopped from raising policy defenses to coverage.").

In *Ehlco*, the Supreme Court of Illinois held that:

> The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage.

17

*Id*. Twin City does not claim to have taken either of these steps prior to the filing of this suit. Instead, it argues that CCM's and BNSF's "estoppel claims" are governed by New Jersey law, which does not preclude an insurer in breach of its duty to defend from asserting coverage defenses. This argument does not survive scrutiny. First, as explained above, Illinois insurance law governs the parties' substantive dispute, and Twin City offers no reasoned basis, nor any authority, for carving out a particular issue for determination under New Jersey law. Second, even assuming that such piecemeal treatment of the issues were appropriate, Twin City misreads the only New Jersey case it cites in this connection. *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 629 A.2d 895, 906–07 (N.J. Super. 1991), aff'd, 134 N.J. 1, 629 A.2d 831 (1993), examined whether the doctrine of *collateral estoppel* prevents an insurer that was not involved in a liability action against its insured from contesting, in a later coverage dispute, the court's factual findings in the liability action. It did not suggest that an insurer that breaches its duty to defend can later assert policy defenses to indemnification.

*****

The foregoing discussion resolves all but one of the claims raised in CCM's and BNSF's pleadings: their claims for statutory remedies under Section 155 of the Illinois Insurance Code. Twin City moves for judgment on the pleadings in its favor on these

18

claims, but its motion is denied as to this claim because it has not shown that the relief CCM and BNSF seek is unavailable as a matter of law. For their parts, CCM and BNSF do not move for judgment on the pleadings on these claims. Accordingly the claims remain pending.

### III.

For the foregoing reasons, CCM's and BNSF's motions for judgment on the pleadings are granted. Twin City's motion for judgment on the pleadings is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: June 21, 2023